The document below is hereby signed.

Signed: May 29, 2018



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TK RESTAURANT MANAGEMENT, | ) | Case No. 17-00269 |
| INC., | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | Not to be published in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER RE
DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT AND
ESTABLISHING THE ISSUES TO BE HEARD AT THE JUNE 14, 2018 HEARING

The District of Columbia has filed *District of Columbia's Motion for Summary Judgment Regarding its Motion to Dismiss or Convert Debtor's Chapter 11 Proceeding* (Dkt. No. 122) under Fed. R. Civ. P. 56, applicable to bankruptcy under Fed. R. Bankr. P. 7056, regarding *District of Columbia's Motion to Dismiss or Convert Debtor's Chapter 11 Proceeding* (Dkt. No. 46). For the reasons set forth below, the motion will be granted.

I

This is the debtor's second bankruptcy case, and much of the District's motion for summary judgment focuses on the history of the debtor's not making tax payments in two prior periods, the

period during the pendency of the debtor's prior case (Case No. 14-00562) and, after that case was closed on April 21, 2016, the period prior to the filing of this case on May 6, 2017. Significantly, however, the motion also points out that the debtor has failed to make payments to the District of Columbia on tax liabilities incurred postpetition in *this* case.  As set forth in the District's Statement of Material Facts Not in Dispute, par. 21:

> Throughout the post-petition period of Debtor's Bankruptcy No. 2, from May 6, 2017, through the date of this pleading, Debtor has failed to make timely tax payments and has written checks from accounts that do not have sufficient funds to cover the amount of the check. The District has attached a chart as Exhibit No 5 setting forth the record of Debtor's payment of post-petition taxes. The chart shows that during the pendency of its third bankruptcy proceeding, Debtor has continued the pattern it demonstrated with its first bankruptcy case: Debtor is late in making its tax payments; Debtor does not consistently pay its monthly tax obligations; and Debtor approximately 50% of the time makes tax payments from bank accounts which do not have sufficient funds to cover the amount of the tax payment. Currently, Debtor has not paid $31,842.10 in taxes owed the District during the post-petition period.

The debtor has not disputed this material fact and it is deemed admitted for purposes of the District's motion.  Under District Court Local Civil Rule 7(h)(1):

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement.  An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue

>   necessary to be litigated, which shall include references
>   to the parts of the record relied on to support the
>   statement. Each such motion and opposition must also
>   contain or be accompanied by a memorandum of points and
>   authorities and proposed order as required by LCvR 7(a),
>   (b) and (c). In determining a motion for summary
>   judgment, the Court may assume that facts identified by
>   the moving party in its statement of material facts are
>   admitted, unless such a fact is controverted in the
>   statement of genuine issues filed in opposition to the
>   motion.

The debtor failed to file a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," and instead submitted affidavits attempting to justify the debtor's prepetition failure timely to make payments of taxes to the District, and its history of many bounced checks for tax payments.[1] The affidavits submitted by the debtor recite that based on information and belief, the District's claim is inaccurate, and that the debtor is currently trying to determine

---

[1] The District's motion for summary judgment included in support of par. 21 of the Statement of Material Facts Not in Dispute a chart showing the $31,842.10 in post-petition delinquent taxes (including penalties and interest thereon) owed the District. Although no affidavit was filed to establish the accuracy of the exhibit, the debtor did not contest the accuracy of par. 21 of the Statement of Material Facts Not in Dispute. In its reply to the debtor's opposition to the District's motion for summary judgment, the District filed an affidavit with a chart that differs somewhat from the chart filed with the motion. The affidavit and the new chart show a larger amount of unpaid postpetition taxes (indicating that $55,272.82 is owed for delinquent postpetition taxes (including penalties and interest thereon)) and differs in some instances as to what was unpaid for each taxable period. However, the important point is that both charts are consistent with the debtor having failed timely to pay postpetition taxes.

the extent of the inaccuracy. However, this does not show that a material fact is in dispute regarding the failure timely to pay postpetition taxes incurred in this case.

II

The failure timely to pay postpetition taxes is cause for dismissal or conversion of the case under 11 U.S.C. § 1112(b)(4)(I), which provides that cause for dismissal or conversion includes "failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." Nothing shows that appointment of a chapter 11 trustee or an examiner is in the best interest of creditors, and, accordingly, under 11 U.S.C. § 1112(b)(1) conversion or dismissal is required unless the debtor shows that 11 U.S.C. § 1112(b)(2) provides an exception to that requirement. Under § 1112(b)(2):

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

4

>  (i) for which there exists a reasonable justification for the act or omission; and

>  (ii) that will be cured within a reasonable period of time fixed by the court.

The debtor has not carried its burden under § 1112(b)(2) of showing that, despite the failure timely to pay taxes, the case ought not be dismissed or converted.

A.

Section 1112(b)(2)(A): Inability to
Obtain Confirmed Plan Within § 1121(e) Deadline

As to § 1112(b)(2)(A), the debtor has missed the deadline to file a disclosure statement and plan. The debtor acknowledged on its petition that it is a small business debtor as defined in 11 U.S.C. § 101(51D). Under 11 U.S.C. § 1121(e), a small business debtor is required to file a disclosure statement and a plan within 300 days after the petition date. This case was filed on May 6, 2017, which means the debtor had until March 5, 2018, to file a disclosure statement and a plan. Now, more than two months after the deadline, the debtor has still not filed a disclosure statement or a plan, nor has the debtor sought an extension of time to do so (and none could be obtained because 11 U.S.C. § 1112(e)(3)(C) requires that "the order extending time is signed before the existing deadline has expired"). Accordingly, the debtor has not established that "there is a reasonable likelihood that a plan will be confirmed within the time frames established in section[] 1121(e)" as required by § 1112(b)(2)(A)

in order to bar conversion or dismissal of the case.

B.

Section 1112(b)(2)(A): No Showing of a
Reasonable Likelihood That a Plan Will be Confirmed

Even if the debtor's deadline under § 1121(e) could be extended, the debtor has not shown that there is a reasonable possibility of obtaining a confirmed plan.

The debtor does not dispute that $31,842.10 in past-due postpetition taxes (including interest and penalties) owed the District remain unpaid.[2] For example, the debtor has paid less than 50% of its sales taxes for October and December 2017. The serious delinquencies in paying taxes is pertinent to the § 1112(b)(2)(A) issue of whether a plan can be confirmed. The debtor offers no explanation for failing to pay these delinquent taxes. The existence of such delinquent postpetition tax debts, required to be paid as administrative claims, casts serious doubt on the debtor's ability to obtain a confirmed plan.

The allowed claims filed in this case include at least $613,890.78 in prepetition tax claims that (to the extent that they are unsecured) are entitled to priority under 11 U.S.C.

---

[2] The District's reply to the debtor's opposition shows a higher figure owed, $55,272.82.

§ 507(a)(8).[3]  (The bulk of the District's claim is secured by a lien on the debtor's assets, but if the debtor's assets, scheduled as worth only $42,494.00, are worth less than those liens, the District's claims would be unsecured to that extent.) Under 11 U.S.C. § 1129(a)(9)(C), a plan must provide for "claims of the kind specified in section 507(a)(8)" to be paid within "5 years after the date of the order for relief under section 301, 302, or 303."  Under 11 U.S.C. § 1129(a)(9)(D), those District secured claims that would be priority claims if unsecured are entitled to the same treatment.

Even with a promised capital infusion of at least $100,000, the debtor's inability to pay postpetition taxes in a timely fashion suggests that it will not be able to obtain confirmation of a plan addressing paying off more than $600,000 in claims entitled to payment within five years of the petition date.  The debtor's monthly operating reports show that in general the debtor's business has been profitable, but the debtor's profits

---

[3]  The $613,890.78 amount should be higher because it does not include any of the interest accrued on the District's prepetition tax claims.  The District's proof of claim failed to indicate the amount of interest accrued on taxes versus the amount of interest accrued on penalties.  Interest on penalties would not be entitled to allowance as a priority claim under 11 U.S.C. § 507(a)(8).  The court is thus unable to determine the amount of interest that is a claim of the District entitled to priority under § 507(a)(8).  **In future cases, the District should consider revising its proof of claim (along the lines of IRS proofs of claim) to distinguish between interest on taxes versus interest on penalties.**

fluctuate considerably, sometimes falling into the negative. Nevertheless, the debtor's profits (according to its monthly operating reports) average at around $6,532 per month. Even accepting that figure,[4] and assuming the debtor could obtain a promised capital infusion of $100,000, this would not suffice to enable the debtor to pay administrative claims in the case (including the District's $31,842.10 administrative claim, and any allowed fees of the debtor's attorneys), plus more than $600,000 in claims entitled to § 1129(a)(9)(C) or (D) treatment, within four years.[5] If the debtor continues to make a profit of $6,532 per month, the debtor can hope to earn $313,536 in four years to pay towards its § 1129(a)(9)(C) and (D) claims and administrative claims, not nearly enough to pay the claims in the specified time. There is no reasonable assurance that the debtor would be able to pay its tax debts entitled to treatment under § 1129(a)(9)(C) and (D) within four years, nor has the debtor

---

[4] The monthly operating reports are less than clear and are of dubious accuracy. For example, the report for March 2018 does not clearly show the amount of net payroll paid and the amount of payroll taxes paid (withheld taxes, and employer's share of taxes, plus FUTA taxes and D.C. unemployment contributions amounts), and the monthly operating reports fail to include the delinquent taxes owed to the District. Moreover, if the debtor is operating profitably, a nagging question is why it nevertheless is failing to pay administrative tax claims (which would stop the accrual of penalties for failing to pay those claims).

[5] A year has already passed since the petition was filed on May 6, 2017, meaning the debtor has four years left to pay these claims.

shown that it is making any effort to get approval from the taxing authorities to pay the claims outside the statutory mandate.

Based on "information and belief," the debtor questions the accuracy of the District of Columbia's claim, and it is currently determining by how much the District's claim is inaccurate. However, this does not show that a material fact is in dispute to defeat this motion for summary judgment. First, the debtor's case has been pending for more than a year, and the debtor has not filed an objection to the District's proof of claim. That is unreasonable delay in taking a step to obtain a confirmed plan within a reasonable period of time. Second, the I.R.S., Maryland, and Virginia, have filed claims for $403,940.87 in the aggregate for claims entitled to § 507(a)(8) priority. With the District's $31,842.10 administrative claim (and any allowed fees of the debtor's attorneys) added in, the debtor has not shown a reasonable likelihood of obtaining a confirmed plan.

C.

Section 1112(b)(2)(B): Lack of
Justification for Late Payments of Postpetition Taxes

Moreover, to bar conversion or dismissal, under § 1112(b)(2)(B) the debtor must establish that the failure timely to pay taxes is a failure "(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the

9

court." The debtor focuses on the issue of bounced checks,[6] but does not dispute that it failed to submit timely payment of postpetition taxes incurred in this case. Even if the court accepts the debtor's explanation for why checks bounced on occasion, no justification has been given for failing timely to send payments of postpetition tax debts to the District.

### III

For all of the foregoing reasons, dismissal or conversion is required. I need not decide whether under § 1112((b)(2), "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the

---

[6] The debtor explains that the reason checks have been returned for insufficient funds is due to the debtor's need to purchase more food to cover its customers' orders when hosting large events. On occasion when the debtor will host a large event, it does not have enough food for the event and its regular customers. In these cases, the debtor must purchase more food and its vendors require cash on delivery ("COD") payment on these purchases. In such instances, if the debit or credit card receipts are delayed in posting in the debtor's accounts, there are insufficient funds in the accounts and checks may bounce. The debtor chooses in those circumstances to pay the bounced check fee over losing customers and business. However, in some instances the debtor did not send the District a check to replace the check that had bounced.

estate."[7]  In addition, I need not address the District's contention that the fact that debtor has filed two bankruptcy cases in four years, and its track record in failing to pay taxes as required by a confirmed plan and an agreement with the District, constitute evidence of bad faith.

IV

The District of Columbia asks that the case be dismissed or converted, but does not specify which action would be the most appropriate here.  The U.S. Trustee has filed a *Motion to Convert* (Dkt. No. 95) that the debtor has objected to.  The debtor has not addressed, however, whether dismissal would be "in the best interest of the creditors and the estate."  Accordingly, the hearing set for June 14, 2018, at 10:30 a.m. will be held to allow the debtor to present evidence that dismissal would be in the best interest of creditors and the estate.  Any party, however, may move for an earlier hearing date or the parties may jointly obtain an earlier hearing date from the Clerk.

---

[7] However, I note that the debtor's failure to pay postpetition taxes in a timely fashion; its failure for months to pay those delinquent taxes, thereby incurring substantial penalties; its incurring bank fees for bounced checks; its failure for more than a year to file a plan; and its failure to observe the deadline of § 1121(e) for filing a plan as a small business debtor all weigh against finding "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate."

V

For all these reasons, it is

ORDERED that the District of Columbia's motion for summary judgment (Dkt. No. 99) is GRANTED and this case will be converted to Chapter 7 or dismissed.  It is further

ORDERED that the hearing set for June 14, 2018, at 10:30 a.m. remains set for the determination as to whether dismissal or conversion would be in the best interest of the creditors and the estate.

[Signed and dated above.]

Copies to: Recipients of e-notifications of orders.